Nijija-Ife Waters

Plaintiff

517 Newhall Street

Hamden, CT 06517

February 25, 2019

FILED
2019 FEB 26 A 11: 33
U.S. DISTRICT COURT
NEW HAVEN, CT.

**Case Name: Waters v. New Haven Board of Education**

**Case Number: 3:18-cv-02144-AVC**

I, Nijija-Ife Waters, oppose the motion on file; I am pleading that the courts understand and accept my request to withdraw the decision to dismiss my complaint without prejudice for the following reason below:

## Equal Pay Act of 1963 (EEOC)

## Compensation discrimination under Title VII, ADEA, or the ADA

Defendant terms of employment for parent liaison positon is full-time by contractual agreement between the New Haven Board of Education and the Paraprofessionals' bargaining unit at salary group VI $32,813.

I was hired from 2014-2016 as a part-time parent liaison. I later learned there was a $28,813 difference in my salary. I brought the information to my immediate supervisor for review, she directed me to Human Resource. I was then told there will be an investigation concerning the matter.

In the meantime, I needed to seek advocacy through Legal Aide concerning Special Education Violations in my child's Individualized Education Plan and 504 Plan created by the Defendant; I was legally advised to address the violations at a Board of Education public

Case Name: Waters v. New Haven Board of Education

February 25, 2019

Page 2

meeting as well as to file an Office of Civil Rights (OCR) complaint. A couple of days later, it was brought to my attention by my immediate supervisor (Principal) there was a full-time parent liaison position available and I was encouraged to apply. As I proceed with the OCR complaint, I was also advised to write to the Defendant and request that my concerns become a matter of record for future references. At this point my immediate supervisor (Principal) begin to increase my work. I then reached out to Human Resources again inquiring about the employment status and salary. The response I received at that time was my immediate supervisor (Principal) would need to make changes; two days later I received an email from my immediate supervisor (Principal) stating, I was no longer employed effective immediately. I was given no explanation until the Fact-Finding OCR hearing, two years later; Human Resource went on record stating the part-time position did not exist, all administrators were informed since 2014, it was not legal to have a parent time parent liaison position due to the contractual agreement. Since then, I have applied for that full-time position in a total of nine times.

As I conclude, I am asking for the courts to keep in consideration I was granted to proceed pauperis, I am not a lawyer, I am not thoroughly familiar with the laws. I am doing the best I can to articulate my case. According to EEOC, compensation discrimination can come in a variety of forms. I hope that I have proven under the EEOC, the job content, unequal wages, job needs to be substantially equal and the retaliation that took place due to the investigation of wages and employment status, legal counsel and I testify in a public meeting in regards to the violations and lack of services by the Defendant. As a result I was left unemployed.

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES



## FINAL FINDING OF NO REASONABLE CAUSE

Nijija Ife-Waters
**COMPLAINANT**

VS.

New Haven Board of Education
**RESPONDENT**

CHRO NO.: 1730374       DATE FILED: DECEMBER 26, 2016
EEOC NO.: 16A-2017-00527

### PARTIES

**COMPLAINANT:**      **COMPLAINANT'S COUNSEL:**

Nijija-Ife Waters      N/A
517 Newhall Street
Hamden, CT 06517

**RESPONDENT:**      **RESPONDENT'S COUNSEL:**

New Haven Board of Education      W. Martyn Philpot, Jr.
54 Meadow Street      Law Office of W. Martyn Philpot, Jr. LLC
New Haven, CT 06511      490 Orange Street
     New Haven, CT 06511

## JURISDICTION

☒ The investigator concludes that the Commission has jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.

☐ The investigator concludes that the Commission does not have jurisdiction to receive, investigate and issue a determination upon the merits of the complaint. Therefore this complaint is dismissed due to the lack of jurisdiction.

## DRAFT COMMENTS

A draft finding was sent to the parties on July 31, 2018. Comments were to be received on or before August 15, 2018.

☐ No comments were received, thus no changes were made to the draft finding.

☒ Comments were received within the comment period and were considered before making this determination. Changes were made to the draft finding.

☐ Comments were received within the comment period and were considered before making this determination. No changes were made to the draft finding.

## FINDINGS OF FACT

1. Nijija-Ife Waters ("Complainant") filed a complaint with the Commission on December 26, 2016 alleging that New Haven Board of Education ("Respondent") discriminated against her by terminating, retaliating, and failing to hire her on the basis of her previous opposition to discrimination.

2. According to CONN. GEN. STAT. Section 46a-82(f), complaints must be filed with the Commission within 180 days of the alleged discriminatory act. This complaint was filed on December 26, 2016. Therefore, events occurring prior to June 29, 2016 are untimely filed. There is no evidence to support tolling the 180-day timeframe. To the extent events that are untimely are discussed in these findings, they are considered only as background information for the timely events.

3. The Complainant began working for Respondent on August 18, 2014 as a part-time College Career Readiness Parent Liaison (CCR). The reason the position was made part-time as opposed to full time was due to budgetary limitations.

4. During the course of her employment, the Complainant wrote letters to New Haven Mayor Toni Harp regarding issues within the administration. These were critical letters and referenced inappropriate handling of matters related to student disabilities among other issues. The school administration was made aware of these letters and the Complainant's opposition to what she believed amounted to discriminatory conduct.

5. The Complainant was terminated from her position on February 24, 2016. The Complainant's position required re-authorization each year as a specialized part-time position. It came to the attention of HR Director Donna Aiello that her position had not been authorized for the 2015-16 school year despite the fact that the Complainant was currently working in it. The school administration decided to pay the Complainant for the work she was doing but terminate her and eliminate the part-time position.

6. Around that same time, the school was going through a reorganization. The decision was made to convert several part-time positions into fewer full time ones. Anyone that wanted to get one of these positions had to apply for it, even those who had previously been working in one of the part time positions.

7. A full time Parent Liaison position was posted on a job-listing program called AppliTrack in the spring of 2016 as a part of that reorganization. The position was not filled by the end of that school year, however, and no one had yet been considered for the job. While the job was posted, the Complainant applied for it numerous times including May 1st, August 10th and September 30th.

8. Glen Worthy was selected for the as the new Principal for Hill House High School for the start of the 2016-17 school year. At the time he began his administration, the Parent Liaison position had not been filled and he believed there was no funding for the full time parent liaison job. Funding for the position was given through Title I which provides funds for schools with a high percentage of low-income students. Delays in the disbursement of those funds, however, meant that there were no available funds to pay for the position at the start of the school year.

9. Shortly after Glen Worthy became principal, the Complainant approached a mutual acquaintance, Dr. Edward Joyner, to have him speak with Worthy and advocate

for her hire. Dr. Joyner called Worthy while the Complainant was in his presence and put the call on speaker phone so she could hear. Worthy was not told and did not know that the Complainant was listening to the conversation. During the call, Worthy stated that he did not like "the way [the Complainant] did business."

10. Despite the lack of funds and the inability to hire and pay for anyone to fill the Parent Liaison position, the job posting was never taken down from the AppliTrack system and there was no indication that the Respondent was not actively seeking applicants for the position.

11. The Title I funds were issued to the school in January of 2017. Principal Glen Worthy decided at that time to delay filling the position until the following school year. At the start of the 2017-18 school year, a full time parent liaison was hired using the same listing that had been on the AppliTrack system since shortly after the Complainant was terminated.

12. There can be no finding of discrimination relating to the Complainant's termination or unequal pay as these events occurred beyond the 180-day timeframe. As discussed above, events occurring prior to June 29, 2016 are untimely. The Complainant was terminated in February of 2016. As these events are untimely, there can be no finding of a violation made with respect to these allegations.

13. There is no reasonable cause to believe the Complainant was not hired as a result of her previous opposition to discrimination. The Complainant opposed discrimination, the Respondent was made aware of this, and the Respondent refused to hire the Complainant. There is evidence that the Complainant's advocacy led Glen Worthy to view her negatively. The Complainant applied for a position with the Respondent several times within the present Complaint's 180-day timeframe. The issue, however, is whether the Complainant was treated differently due to her prior opposition to discrimination. She was not. The position the Complainant applied for was not filled by anyone until the 2017-18 school year on the basis that Worthy believed there was no funding for it until January 2017. There is a dispute as to whether or not that was actually the case; whether there were Title I funds available from the previous administration that Worthy was unaware of that would have allowed him to pay someone to work in the position until the new Title I funds were disbursed in January of 2017[1]. This is ultimately irrelevant

---

[1] In comments to the draft finding, the Complainant again raises the issue of whether or not there were actually Title I funds available at the start of the 2016-2017 school year. Principal Worthy was consistent in his testimony over the course of two interviews that he believed there was no available funding for the position at the time the Complainant last applied for the job. His testimony regarding how the Respondent's budget works is consistent with the testimony of former principal Kermit Carolina and former HR director Donna Aiello on that subject. For that reason, it is credible that Principal Worthy

– it is credible that Glen Worthy did not believe funds were available which is why he did not hire anyone until after the filing of this complaint. That there may have been funds and Worthy did not check or care to check does not change that his actions were motivated by the belief that there were no funds. There is therefore no difference in how the Complainant was treated and how those who had not opposed discrimination were treated; no one was considered for the position since Worthy believed he could not fill it. The Complainant's previous opposition therefore played no role in the refusal to hire her and there is no reasonable cause to believe a discriminatory practice occurred.

## DETERMINATION

☐ After reviewing all of the evidence in the Commission's file, the investigator concludes there is **reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

☒ After reviewing all of the evidence in the Commission's file, the investigator concludes that there is **no reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

Dated and entered this 28th day of August, 2018.

**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

*Spencer Hill* (signature)

Spencer Hill
Human Rights Attorney

---

believed there was no funding available for the position and that this was the basis for deciding not to hire the Complainant at the time she applied. Further investigation of whether Title I funding was available for the position at the time is not, therefore, necessary.